```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

Jody L. Waulk,                        :

    Plaintiff,                    :

  v.                                  :   Case No. 2:15-cv-2982

                                           :   JUDGE GEORGE C. SMITH
Commissioner of Social Security,         Magistrate Judge Kemp

    Defendant.                    :

## REPORT AND RECOMMENDATION

### I. Introduction

Plaintiff, Jody L. Waulk, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. Those applications were filed on August 14, 2012, and alleged that Plaintiff became disabled on May 4, 2012.

After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on June 5, 2014. In a decision dated July 9, 2014, the ALJ denied benefits. That became the Commissioner's final decision on September 30, 2015, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on January 26, 2016. Plaintiff filed a statement of specific errors on June 13, 2016, to which the Commissioner responded on September 12, 2016. Plaintiff has not filed a reply brief, and the case is now ready to decide.

### II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 37 years old as of the date of the hearing and who has an eleventh grade education, taking LD classes, testified as follows. Her testimony appears at pages 158-79 of the administrative record.

Plaintiff was first asked about her past work. She had been a field supervisor in the security field, having worked in that area for eight years. She lost that job because her hip and back pain caused her to take too much time off. Her job included driving to different locations and training employees. Before that, she had worked as a nurse's aide but stopped due to problems with her back.

Plaintiff said she suffered from asthma and could only walk for half a block before becoming short of breath. She took breathing treatments four times per day. At the time of the hearing, she weighed 319 pounds. She had been referred for bariatric surgery at one point but did not undergo it because she had no one to drive her to the appointment. Plaintiff had also had bilateral carpal tunnel surgery and was still experiencing pain in her right elbow.

Next, Plaintiff testified about her back pain. She had pain at the L4-L5 level, and also had problems with her right knee (on which she had had surgery) and her left shoulder. The shoulder had been operated on as well and needed surgery again. With her limitations, she could not lift anything heavier than a gallon of milk (and had trouble even with that) and she could not sit for more than thirty minutes without having to change positions. She did not climb stairs, and also had trouble grasping objects with her right hand. She took medications including Vicodin and oxycodone, which dulled her pain but did not take it away.

In response to additional questions from her attorney, Plaintiff said that she was seeing a counselor and a psychiatrist. She had been depressed for two years after the death of her mother. So far, medication had not helped her. On a daily basis she tended to isolate herself, had crying spells, and experienced anger and mood swings. She did not often leave home and did not want to be around others. Additionally, she was

unable to do some household chores like sweeping, mopping, or running the vacuum. Her most comfortable position was lying down with a pillow between her knees, and she spent half the day in that position.

### III. The Medical Records

Although the Court typically summarizes the pertinent medical records, it will not do so here. They are comprehensively summarized in Plaintiff's statement of errors (Doc. 17) and their specific content is not material to the Court's recommended decision, which turns on a point of law related to the vocational testimony.

### IV. The Vocational Testimony

Carl Hartung was called to testify as a vocational expert at the administrative hearing. His testimony begins at page 179 of the administrative record.

Mr. Hartung testified, first, that Plaintiff's past job as a security guard was light and semi-skilled, and the supervisory position was light and skilled. The nurse's aide position is semi-skilled and medium according to the DOT but is usually performed at the heavy or very heavy exertional level.

Next, he was first asked some questions about someone with Plaintiff's background who could lift ten pounds occasionally and less than ten pounds frequently, and who could sit for an hour at a time for six hours in a workday and stand or walk for 25 minutes at a time for up to two hours in the workday. The person could also occasionally crouch, stoop, use stairs with a handrail, and operate foot controls with the right leg. Finally, the person could have only occasional interaction with others in the workplace or the community and had to work in a relatively static environment. Mr. Hartung said that such a person could not perform Plaintiff's past work but could work as an addresser, document preparer, or parimutuel ticket checker. If the person

could only reach, handle, or finger with the dominant arm and hand, however, those jobs would be eliminated, but the person could do other jobs like election clerk, surveillance system monitor, and call out operator.

Finally, Mr. Hartung was asked whether someone who was as limited as Plaintiff described in her testimony could be employed, and he said no. The same would be true for someone who would miss more than ten days of work per year.

## V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 19-28 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 30, 2017. Second, he found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Going to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including degenerative disc disease of the lumbar spine; degenerative joint disease of the right knee; left shoulder acromioclavicular joint osteoarthritis; partial-thickness tear of the extensor tendon at its insertion on the right lateral epicondyle; bilateral carpal tunnel syndrome, status post bilateral carpal tunnel releases; asthma; obesity; and depression. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to lift and/or carry ten pounds occasionally and less than ten pounds frequently, sit for an hour at a time for a total

of six hours in a workday, stand or walk for 25 minutes at a time for a total of two hours in a workday, occasionally crouch, stoop, use stairs with a handrail, and operate right foot controls, and occasionally handle, reach, and finger with the right upper extremity.  Also, she could have only occasional interaction with others in the workplace or the community and had to work in a relatively static work environment.

The ALJ concluded that with these limitations, Plaintiff could not do her past relevant work.  However, she could do jobs like election clerk, surveillance system monitor, and call out operator.  The ALJ further determined that these jobs existed in significant numbers in the national economy.  Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

VI. <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, Plaintiff raises the following issues: (1) the ALJ failed to identify and resolve a conflict between the vocational expert's testimony and the <u>Dictionary of Occupational Titles</u>; and (2) the case should be remanded for consideration of new and material evidence pursuant to 42 U.S.C. §405(g), sentence six.

A. <u>Conflict with the DOT</u>

There are several parts to Plaintiff's first argument. First, she asserts that although the ALJ assumed that the three jobs identified by the vocational expert in response to the key hypothetical question - the one which incorporated restrictions on reaching, handling, and fingering - were representative of other occupations as well, Mr. Hartung never said so explicitly. Second, she argues that someone with the residual functional capacity determined by the ALJ cannot, under the DOT, do the three jobs which Mr. Hartung identified because each job requires more than occasional contact with others.  The Commissioner responds that any such conflict was not apparent from the record

-5-

and, therefore, the ALJ had no duty to inquire further than he did.

Both parties rely on Social Security Ruling (SSR) 00-4p as setting out the applicable legal standard. That ruling says, in part, that "[o]ccupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT." It then imposes a duty on the ALJ to "elicit a reasonable explanation" for any "apparent unresolved conflict between VE or VS evidence and the DOT...." It also requires an ALJ to "inquire, on the record, as to whether or not there is such consistency" between the vocational testimony and the DOT.

Here, the ALJ asked, after Mr. Hartung testified about certain jobs (not the ones which ultimately ended up being the subject of the ALJ's decision), whether that testimony was consistent with the DOT. He said that it was. (Tr. 182-83). However, once the hypothetical question was changed to include restrictions on reaching, handling, and fingering, the question about the DOT was not re-asked. Mr. Hartung did supply DOT numbers for each of the occupations he identified, indicating that the jobs were sedentary and unskilled and required only occasional use of the upper extremity, but he did not testify explicitly about the jobs' requirements for contact with others, or that his testimony as to those jobs was consistent with the DOT. The Commissioner's memorandum appears not to recognize that the vocational expert gave additional testimony after being asked about consistency with the DOT and therefore provides little argument on the significance of this fact, other than to assert that any inconsistency between the later testimony and the DOT was not apparent from the record. The Commissioner also offers no substantive response to Plaintiff's claim that a conflict actually exists here.

The Court of Appeals has recognized (albeit in an unpublished decision) that, as its plain language indicates, SSR 00-4p imposes an affirmative duty on an ALJ to inquire about conflicts between the DOT and the vocational testimony. Lancaster v. Comm'r of Social Security, 228 Fed. Appx. 563, 575 (6th Cir. 2007). That has been followed by most, if not all, of the District Courts within the Sixth Circuit. Typically, those decisions first recognize an affirmative duty to inquire and, if it is breached, ask, as part of harmless error analysis, whether there is actually a conflict between the two vocational sources. If so, the error is not harmless because there is a further need to explore why the DOT says something different from the vocational expert. Stull v. Astrue, 2011 WL 830633 (N.D. Ohio Jan. 18, 2011) illustrates this approach, quoting this statement from Bratton v. Astrue, 2010 WL 2901856 (M.D. Tenn. July 19, 2010): "disposition of this issue rests on a three-step inquiry: (1) whether the ALJ asked the VE about the DOT; (2) if the ALJ did not, whether there was an actual conflict between the VE's testimony and the DOT; and (3) if there was not conflict, whether failure to ask the VE about the DOT is harmless error." Although Stull found that the error in that case was harmless because the plaintiff "failed to identify any inconsistency between the VE's testimony and the DOT," id. at *9, an approach consistent with the decision in Lindsley v. Comm'r of Social Security, 560 F.3d 301 (6th Cir. 2009), other courts have remanded cases when there is an apparent conflict. See, e.g., Goulette v. Comm'r of Social Security, 2013 WL 2371695 (E.D. Mich. May 30, 2013).

In this case, Plaintiff has identified a potential conflict, since the three jobs which the ALJ found that Plaintiff could perform all require, according to the DOT, "frequent talking." Such a requirement may or may not be consistent with having only occasional contact with the public or with coworkers, but more

explanation is needed before the Court can determine if the ALJ's decision on this issue is supported by substantial evidence. Since the ALJ did not, after the crucial testimony was given, make the inquiry required by SSR 00-4p, and because the error is not harmless, the case must be remanded for further proceedings on this issue.

## B. Sentence Six Remand

Plaintiff has also moved for a remand under 42 U.S.C. §405(g), sentence six. This Court typically chooses not to address such a request when a remand has already been ordered under sentence four. See, e.g., Johnson v. Comm'r of Social Security, 2016 WL 7208783, *6 (S.D. Ohio Dec. 13, 2016). It could be argued, in this case, that because the remand is limited to a narrow issue about vocational testimony, the Court should still resolve the sentence six issue.

However, the evidence which Plaintiff claims to be "new and material" is fairly limited in scope. Further, if the ALJ determines that Plaintiff cannot actually do the jobs identified by the vocational expert, and cannot do other jobs, any issue under sentence six would be moot. For these reasons, and in keeping with the general principle that the Court should decide only those matters which may actually change the legal relationship of the parties, the Court declines to address the merits of the sentence six remand request. The ALJ is free to consider Plaintiff's additional evidence as part of the remand proceedings.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## VIII. Procedure on Objections

-8-

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge